# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

### GREEN BAY DIVISION

| | |
|---|---|
| DEBRA PRATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) PLAINTIFF DEMANDS |
| | ) TRIAL BY JURY |
| v. | ) |
| | ) |
| KAYSUN CORPORATION, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

The Plaintiff DEBRA PRATT, for her complaint against Defendant KAYSUN CORPORATION, alleges:

1. The Plaintiff is a citizen of the State of Wisconsin, County of Manitowoc.

2. The Defendant KAYSUN CORPORATION is a Wisconsin corporation with its principal place of business in Manitowoc, Manitowoc County, Wisconsin.

1

3.     This case arises under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and this Court has original jurisdiction of this cause under 28 U.S.C. § 2000e-5. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     Venue is proper in this District because the plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b) and because it is a judicial district in the State in which the unlawful employment practice is alleged to have been committed within the meaning of 42 U.S.C. §2000e-5(f)(3).

5.     During the time Plaintiff was employed by Defendant, she was an "employee" as that term is defined in Title VII, 42 U.S.C. § 2000e et seq.

6.     Defendant KAYSUN CORPORATION was an "employer" for purposes of the Title VII, 42 U.S.C. § 2000e et seq., during the time it employed Plaintiff.

7.     Defendant discriminated and retaliated against Plaintiff based upon her sex contrary to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S. C. §2000e et seq.

8.     Plaintiff was originally employed by Defendant beginning in February, 2005, as a Human Resources Administrative Assistant, first as a temporary employee and then as a regular employee in May 2005.

9.     In September, 2008, Plaintiff was promoted to the position of Human Resources Generalist, in which position she was in charge of all operations of the Human

2

Resources Department of Defendant Kaysun and a member of the Kaysun Leadership Team.

10. Throughout the year 2010, one of Defendant's managers, Keith Bridgford, began belittling and harassing Plaintiff because of her female gender.

11. Plaintiff became aware that Bridgford was also harassing other female employees of Kaysun, and creating a hostile work environment for those employees, as well as Plaintiff.

12. Plaintiff directly confronted Bridgford about this unacceptable conduct, and informed him that he was creating a hostile environment for Plaintiff, as well as other women at Kaysun.

13. Plaintiff also requested that he cease these harassing actions toward female employees of Kaysun.

14. In May, 2010, when Bridgford refused to cease his harassing conduct, but continued to demean and treat women employees of Kaysun improperly, Plaintiff filed a formal complaint against Bridgford with Ben Harrison, the President of Kaysun.

15. Rather than taking steps to correct Bridgford's actions, Harrison requested Plaintiff to "let this go," and "start over." Plaintiff agreed to do so, but informed Harrison that she could not continue to tolerate harassing conduct from Bridgford in the future.

16. In December, 2010, another female employee of Kaysun filed a sexual harassment complaint against one of Bridgford's direct reports, with specific reference to Bridgford's behavior with Plaintiff as head of Human Resources.

17. Plaintiff attempted to investigate that complaint, with the intention that any unlawful sexual harassment that was occurring might be identified and curtailed, which was one of her job duties, but Bridgford refused to cooperate with the investigation.

18. After having learned that Plaintiff was investigating complaints of sexual harassment against him, Bridgford increased his harassment of Plaintiff in retaliation for her efforts to properly do her job regarding complaints of sexual harassment by other Kaysun employees.

19. Plaintiff informed the President of Kaysun of the complaint, and of Bridgford's refusal to cooperate with her investigation of such complaints, but again Harrison took no action whatsoever against Bridgford, and allowed him to continue to harass female employees of Kaysun.

20. Bridgford continued to harass Plaintiff, by among other things, refusing to provide her with information from his department which she required to properly perform her job duties. Plaintiff's complaints about this to Harrison were again ignored.

21. Throughout the second half of 2011, several other female employees complained about Bridgford's harassment of them based upon their gender. All attempts by Plaintiff to take corrective action as a result of those complaints were rebuffed by Kaysun's officers.

22. Rather, after she raised the issues of Bridgford's improper actions toward women employees, Plaintiff was subjected to a continuous pattern of harassment by male

4

employees of Defendant, including its upper-echelon supervisory employees (all of whom were male) which caused a hostile work environment for Plaintiff, one of two female member of Kaysun's senior management team.

23. Although Plaintiff was performing her job duties in an excellent and exemplary manner, her bonus was reduced in January, 2012, while other male employees were given the normal bonus percentages they had received in prior years. The real but unstated reason for this disparate treatment was sex discrimination and retaliation for the Plaintiff's opposition to unlawful sexual harassment.

24. On February 27, 2012, Plaintiff was demoted from her position as head of Human Resources for Kaysun. When Plaintiff inquired why this action had been taken, Harrison stated her demotion was not related to her job performance, but was because she did not support all team members, including Bridgford. The real reason for this demotion was sex discrimination and retaliation for the Plaintiff's opposition to unlawful sexual harassment.

25. A new Human Resources Manager, with no managerial experience and less knowledge relating to human resources was hired, who became Plaintiff's supervisor.

26. On March 14 and on March 21, 2012, Plaintiff complained to the new Human Resources supervisor that both Bridgford and Harrison had harassed her in the past, and were continuing to harass her, because of her gender, which was a violation of the law, and she asked that an investigation of this unlawful conduct be initiated.

27. At that time Plaintiff mentioned that perhaps it was time for her to seek assistance from the Equal Employment Opportunity Commission.

5

Case 1:13-cv-00763-WCG   Filed 07/08/13   Page 5 of 8   Document 1

28. On March 22, 2012, the very next day after her March 21 complaint, Plaintiff's employment was terminated, purportedly because of a reduction in force. The real reason for her termination was sex discrimination and retaliation for the Plaintiff's opposition to unlawful sexual harassment.

29. At the time Defendant fired Plaintiff, it also abrogated an agreement it had entered into with Plaintiff to pay her tuition in support of her efforts to earn a bachelor's degree at a local college.

30. Plaintiff's termination was not due to a legitimate reduction in force, but, rather, the stated reduction in force was a pretext to take adverse action against Plaintiff because she was a female and had sought to exercise her rights and to protect the rights of other female employees under Title VII.

31. As a result of the actions of Defendant, Plaintiff has been deprived of salary and other benefits to which she was entitled as an employee of Kaysun.

32. Defendant's treatment of Plaintiff in allowing a hostile work environment to exist, was due to her gender, female, in violation of the law, and has caused Plaintiff to suffer emotional and mental anguish.

33. Defendant's actions and omissions were reckless and willful and wanton in that it has at all times had full knowledge of its obligations to Plaintiff under the law, but has failed and refused to comply with those obligations.

34. All conditions precedent to this action within the meaning of Rule 9©, Fed. R. Civ. Pro., have been performed or have otherwise occurred.

WHEREFORE, Plaintiff prays that this Court grant her the following relief:

A.   Back pay which she would have earned had she continued in her employment, to make Plaintiff whole, with interest as allowed by law;

B.   An amount to compensate Plaintiff for Defendant's failure to pay for her college tuition for which Defendant was obligated to reimburse her.

C.   An award of compensatory damages in an amount to be proven at trial for the humiliation and mental and emotional suffering she has endured as a result of Defendant's actions;

D.   An award of punitive damages in an amount to be proven at trial.

E.   An award to Plaintiff of her costs and expenses incurred herein, including attorneys' fees; and

F.   Such other and further relief that this Court deems just and proper.

Dated this Monday, July 08, 2013

Respectfully submitted,

Debra Pratt,

Plaintiff,

By

WAYNE B. GIAMPIETRO
POLTROCK & GIAMPIETRO
123 W. Madison St., Suite 1300
Chicago, IL 60602
Phone:       (312) 236 0606;
Fax: (312) 236 9264
E-mail:       wgiampietro@wpglawyers.com

THE JEFF SCOTT OLSON LAW FIRM, S.C.

7

JEFF SCOTT OLSON
State Bar No. 1016284
131 W. Wilson St., Suite 1200
Madison, WI 53703
Phone: (608) 283-6001
Facsimile: (608) 283-0945
E-mail: jsolson@scofflaw.com

/s/ Jeff Scott Olson
_____

JEFF SCOTT OLSON

ATTORNEYS FOR PLAINTIFFS